# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ALBERTO RIVERA,

      Petitioner,

      v.                                      Case No. 20-CV-1695-SCD

DAN CROMWELL,[1]
      *Warden, New Lisbon Correctional Institution*,

      Respondent.

---

## DECISION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS

---

Alberto Rivera filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rivera identifies four claims for relief and requests a new trial or, in the alternative, an evidentiary hearing to further develop his claims. As explained herein, Rivera has not established that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because Rivera is not entitled to federal habeas relief, I will deny his petition and dismiss this action.

## BACKGROUND

### I.    Factual Background

On April 16, 2015, the State of Wisconsin filed a criminal complaint charging Rivera with being a felon in possession of a firearm. ECF No. 19 at 4. According to Rivera, the complaint described an incident on April 8, 2015, in which Henry Hodges was shot and killed

---

[1] Since Rivera filed his petition, he transferred from Columbia Correctional Institution to New Lisbon Correctional Institution. The caption has therefore been updated to reflect the correct respondent.

and Beth[2] was shot and wounded. *Id.* Rivera hired an attorney to represent him on the possession charge, and that attorney arranged for Rivera to turn himself in. *Id.* Rivera decided *not* to turn himself in, and police arrested him in August 2015. *Id.* A public defender represented Rivera at his initial appearance. ECF No. 12-14 at 4:12–16. No party mentioned that Rivera had retained counsel during the initial appearance. *See generally id.* Later that day, Rivera appeared in a lineup during which Beth identified Rivera as the shooter. ECF No. 19 at 4–5. Rivera claims that he asked law enforcement to contact the attorney who he had hired before the lineup and that law enforcement refused—instead telling Rivera, "There's your attorney," while pointing at a public defender Rivera did not know. *Id.*

The State subsequently filed additional charges against Rivera, including first-degree intentional homicide, attempted homicide, and attempted arm robbery. *Id.* at 5. Prior to trial, the State sought permission to introduce evidence of other acts. *See* ECF No. 12-19; *see also* Wis. Stat. § 904.04(2) (prohibiting the admission of other crimes, wrongs, or acts for propensity purposes but permitting such evidence "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Specifically, the proposed evidence involved Rivera's 1997 conviction for felony murder (with the underlying charge of attempted armed robbery) in which Rivera and a co-actor set up a drug purchase with a supplier, held the supplier hostage in a car while they searched him and a nearby house for money and drugs, and then Rivera shot the supplier twice in the car. ECF No. 12-5 ¶ 34. Rivera also did not turn himself in after learning the police were searching for him. *Id.* ¶¶ 34–35. The court found the prejudicial value of the other-acts evidence substantially outweighed its probative value, and therefore, denied the State's

---

[2] The State used Beth as a pseudonym, pursuant to Wis. Stat. Rule 809.86(4). *See* ECF No. 12-5 at 2 n.3.

motion. ECF No. 12-19 at 12–14. However, the court indicated that it would reconsider that decision on rebuttal because the defense's case could shift the balance. *Id.*

At trial, Beth testified that she and Hodges (her boyfriend) were driving to dinner when Hodges received a call from "Berto" and replied that he would stop by Berto's house. ECF No. 12-23 at 5:9–7:18. Beth explained that she had seen Berto five or six times before, knew him to be associated with Hodges, and had been to his residence. *Id.* at 7:19–25. When asked if she could see Berto in the courtroom, Beth identified Rivera. *Id.* at 8:1–9. Beth said that she waited in the vehicle while Hodges went inside Berto's apartment. *Id.* at 10:17–11:1. About ten to fifteen minutes later, Berto appeared outside the vehicle door, pointed a gun with a laser at Beth, and instructed her to move to the back of the vehicle. *Id.* at 11:8–14:25. After Beth moved to the far back row of seats, Berto got in the middle row of the vehicle, instructed Beth to keep her head down, and made a call instructing someone to "bring him down." *Id.* at 14:15–18:4. Someone else drove the vehicle around back and pushed Hodges into the middle row next to Rivera. *Id.* at 19:4–23. Beth observed that Hodges' mouth seemed to be covered and that he appeared to be tied up. *Id.* at 19:12–15, 23:24–24:1. Beth heard Rivera ask Hodges multiple times, "Where is the money?" *Id.* at 20:5–7.

After some driving and back and forth about looking for money, Beth remembered the vehicle stopping and hearing four shots. *Id.* at 20:22:24:25. Specifically, she testified that she heard the door open, heard two shots fired, and then it felt like someone leaned over from where Rivera had been in the seat in front of her and fired two more shots that struck her. *Id.* at 24:22–28:25. Beth ran to a neighboring home and asked an occupant to call the police. *Id.* at 28:22–29:24. Beth didn't know Berto's last name but gave his first name and a physical description to the police inside the ambulance. *Id.* at 30:13–18, 58:2–59:9. Beth also identified

the location of Berto's apartment on a detective's phone. *Id.* at 31:20–24. On the following

day, a police officer brought a photograph of Rivera to the hospital for Beth to review. *Id.* at

31:25–33:10, 76:17–80:7. Beth confirmed that she was certain the person in the photograph

was the shooter. *Id.*

For his part, Rivera testified that he knew Hodges and the individuals who shot him

but that he did not play a role in Hodges' death. ECF No. 19 at 5. According to Rivera, he

met Hodges in prison and began selling drugs with him after their release. ECF No. 12-24 at

46:5–20. Rivera testified about the reason he was in prison during his direct examination—

explaining that he killed someone as a teenager during an attempted robbery with a friend. *Id.*

at 46:21–47:8. After Rivera concluded his testimony and the defense rested its case, the trial

court asked, "So that was a strategic decision by the defense to bring up the 1997 case?"

Defense counsel responded:

> It was a strategic decision in light of the prior Court's decision in this
> case. That were the defendant to offer a defense of just about anything, that
> that would then come into play.
>
> In other words, absence of intent, mistake, motive, that the state could
> then bring that up. So yes, the best defense is a good offense was the thought-
> out plan of Mr. Rivera and I. That we would bring it up.

Rivera also testified that he had never seen Beth before the trial. *Id.* at 49:18–21. Rivera

explained that he arrived at the scene of the crime in time to see two other individuals (who

he knew from selling drugs) exit Hodges' vehicle and that one of them shot into the vehicle.

*Id.* at 72:3–16. Rivera testified that he did not discuss what he saw with those individuals and

did not know that Beth was in the vehicle. *Id.* at 72:23–74:14.

## II.    Procedural Background

A Milwaukee County jury convicted Rivera of first-degree intentional homicide,

attempted first-degree intentional homicide, two counts of armed robbery, and being a felon

4

in possession of a firearm. ECF No. 1 at 2. The court later sentenced Rivera to life imprisonment without the possibility of parole. *Id.* Rivera filed a direct appeal, arguing (1) the trial court improperly allowed the admission of prejudicial other-acts evidence, and (2) the identification evidence was insufficient to support conviction. ECF Nos. 12-2 at 7–11, 12-5. The Wisconsin Court of Appeals affirmed the judgment against Rivera because it found admission of the other-acts evidence was not an erroneous exercise of the trial court's discretion and sufficient evidence supported the jury's findings. ECF No. 12-5 ¶¶ 41, 49. The Supreme Court of Wisconsin denied review. ECF No. 12-3.

On November 10, 2020, Rivera filed a postconviction motion in state court pursuant to Wis. Stat. § 974.06. *See* ECF No. 1 at 3. That motion argued that counsel was ineffective for failing to challenge Beth's in-court identification of Rivera based on: (1) an impermissibly suggestive showup (i.e., the photograph shown to Beth at the hospital), and (2) a violation of Rivera's right to counsel of choice when the State declined to contact the attorney he had retained prior to the lineup. *Id.*

Rivera also filed a habeas petition in the federal district court for the Eastern District of Wisconsin on November 10, 2020. *Id.* at 1. He raised two allegedly exhausted grounds for relief (related to the claims brought on direct appeal) and two unexhausted grounds (identifying those brought in the postconviction motion). *Id.* at 6–14. I granted Rivera's motion to stay the case pending resolution of his postconviction motion in state court. ECF No. 4. Ultimately, the Wisconsin Court of Appeals affirmed the circuit court's denial of Rivera's postconviction motion. ECF No. 12-11. The Supreme Court of Wisconsin once again denied review. ECF No. 12-13.

Dan Cromwell, the warden who has custody of Rivera, filed an answer to the federal habeas petition, ECF No. 12; Rivera filed a brief in support of his petition, ECF No. 19; Cromwell filed a brief in opposition, ECF No. 26; and Rivera filed a reply brief, ECF No. 28. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 7.

## STANDARD OF REVIEW

Rivera's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 572 U.S. 415, 419 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13.

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). "Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Id.* (citation omitted).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied

7

discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)).

## ANALYSIS

Rivera presents three claims of ineffective assistance of counsel, alleging counsel failed to challenge: (1) a violation of his right to counsel of choice during a post-indictment lineup; (2) an impermissibly suggestive showup; and (3) the admission of other-acts evidence. ECF No. 19 at 9–22, 27–30. Rivera also claims the evidence was insufficient to support his convictions for homicide, attempted homicide, and being a felon in possession of a firearm. *Id.* at 23–27. The respondent contends that the three claims for ineffective assistance of counsel are procedurally defaulted and that, in any event, all of Rivera's grounds for relief lack merit. ECF No. 26 at 1–2.

## I. Only One of the Petitioner's Three Claims for Ineffective Assistance of Counsel is Procedurally Defaulted.

### A. Counsel of Choice and Showup Procedure

The respondent asserts that Rivera's first two claims—involving counsel of choice and the allegedly suggestive showup—are procedurally defaulted because the Wisconsin Court of Appeals resolved both these claims on the adequate and independent state law ground that Rivera failed to state a claim under *State v. Allen*, 682 N.W.2d 433, 439 (Wis. 2004). *See* ECF No. 26 at 10. Federal courts "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). A state law ground "is adequate if it is 'firmly established and regularly followed as of the time when the procedural default occurred.'" *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021) (quoting *Richardson v.*

*Lemke*, 745 F.3d 258, 271 (7th Cir. 2014)). A state law ground is independent "if it does not depend on the merits of the petitioner's claim." *Id.* (citing *Stewart v. Smith*, 536 U.S. 856, 860 (2002)).

Rivera did not raise either of these two ineffective-assistance claims in state court until he brought a postconviction motion under Wis. Stat. § 974.06. *See* ECF No. 12-11. Wisconsin law bars defendants from bringing claims for relief under Wis. Stat. § 974.06 absent a "sufficient reason" for having failed to raise them in a previous postconviction motion under Wis. Stat. § 974.02 or on direct appeal. *See State v. Escalona-Naranjo*, 517 N.W.2d 157, 164 (Wis. 1994)). Ineffective assistance of postconviction counsel may constitute a sufficient reason if the defendant can "demonstrate that the claims he wishes to bring are clearly stronger than the claims postconviction counsel actually brought." *State v. Romero-Georgana*, 849 N.W.2d 668, 685 (Wis. 2014). Additionally, Wisconsin law imposes a pleading requirement—known as the *Allen* rule—whereby "[a] hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 682 N.W.2d at 439.

Here, the Wisconsin Court of Appeals cited the *Allen* rule and found Rivera was not entitled to an evidentiary hearing because each claim for ineffective assistance of counsel "fails." *See* ECF No. 12-11 ¶¶ 33, 40–41 (citing *Allen*, 682 N.W.2d at 437). Therefore, the court concluded that Rivera's new claims were not "clearly stronger" than those brought by counsel on direct appeal, and Rivera could not overcome the procedural bar. *See id.* The Wisconsin Court of Appeals clearly relied on the standards set forth by *Allen*, *Romero-Georgana*, and *Escalona-Naranjo*. *See* ECF No. 12-11 ¶¶ 40–41 (directly citing these cases and concluding that

9

Rivera was barred from obtaining relief by way of a postconviction motion under Wis. Stat. § 974.06).

Although the state court seemingly relied on an independent procedural ground for denying relief, the Supreme Court has observed that "[i]t is not always easy for a federal court to apply the independent and adequate state ground doctrine." *Coleman v. Thompson,* 501 U.S. 722, 732 (1991). Rivera argues that his counsel-of-choice and show-up claims are not procedurally defaulted because the state court's procedural determinations were intertwined with the merits of his claims. ECF No. 19 at 8–9 (citing *Ward v. Deppisch*, No. 07C0961, 2008 WL 2694746, at *8 (E.D. Wis. July 3, 2008) (recognizing the *Bentley/Allen* pleading standard is a state procedural rule but finding no procedural default because "[t]here is simply no way to separate the merits of [the petitioner's] ineffective-assistance claims from the question of whether he pleaded valid ineffective-assistance claims")).

The respondent argues that the Seventh Circuit's decision in *Whyte v. Winkleski* conclusively rejects Rivera's argument. *See* ECF No. 26 at 18 (citing *Whyte*, 34 F.4th 617, 628 (7th Cir. 2022)). There, the Circuit found that *Allen* operated as an independent state-law ground because the petitioner failed to satisfy *Allen*'s pleading standards. *Whyte,* 34 F.4th at 628. The court found that "in his pleadings before the state trial court on postconviction under § 974.06, Whyte merely declared: 'At a hearing, the defendant will establish that post-conviction counsel's deficient performance prejudiced him.'" *Id.* at 625. That barebones assertion wasn't enough: under *Allen*, he had to plead more. Whyte also argued that *Allen* did not provide an independent state-law ground because the state court's consideration of his argument was necessarily intertwined with the merits of his ineffective assistance claim. *Id.* at 628. The Seventh Circuit also rejected that argument because, if that were true, "it is difficult

10

to imagine any scenario in which *Allen* would constitute an independent state ground because a Wisconsin court must always examine the substance of the underlying claim to determine whether it is sufficiently pleaded." *Id.* Because Whyte's assertion of ineffective assistance was perfunctory, the state courts rejected his ineffective assistance claim as procedurally barred under *Allen,* and the Circuit found that basis constituted an independent and adequate state-law ground. *Id.* This was true even though the state courts at least partially addressed the merits of Whyte's claim when they found he had not met *Allen*'s pleading standards. *See id.*

The same held true in *Triplett v. McDermott*, where the state court of appeals had concluded, based on the defendant's "conclusory and vague" ineffective assistance arguments, "that Triplett . . . failed to demonstrate that he was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel." *State v. Triplett,* No. 2014AP2825–CR, 2016 WL 1552187, at *4 (Wis. April 14, 2016). On habeas review, the Seventh Circuit found that the federal district court had erred in concluding that the state court's decision was a "merits" decision; instead, the Circuit pointed to the state court's conclusion that the petitioner "had only conclusorily alleged that he would have gone to trial had he realized that the sentencing judge was free to consider the read-in charges." *Triplett*, 996 F.3d at 830. Moreover, the state court had "focused entirely on the adequacy of Triplett's pleading; nowhere is there a finding as to the merits of his ineffectiveness claim." *Id.* As in *Whyte,* the Seventh Circuit found that the state courts' reliance on *Allen*'s pleading standards to dispense with the petitioner's "conclusorily alleged" claim was an independent and adequate ground for its decision. *Id.*

Finally, in *Garcia v. Cromwell,* the Seventh Circuit found that the state court of appeals had rejected the defendant's § 974.06 ineffective assistance claim based on *Romero-Georgana,* a case requiring a defendant to demonstrate that his proposed new ineffective assistance

claims were clearly stronger than the claims original counsel had brought. *Garcia*, 28 F.4th 764, 774 (7th Cir. 2022) (citing *Romero-Georgana*, 849 N.W.2d at 685). The court rejected the petitioner's argument that the *Romero-Georgana* standard was "too entangled with the merits of his federal claim to be an independent basis for the state court's decision" because the state court had "focused entirely on Garcia's failure to carry his pleading burden" and "never engaged in a merits analysis of the defaulted *Strickland* claims." *Id.* at 774–75. Ultimately, like in *Whyte* and *Triplett*, the Circuit found that the defendant's failure to meet a state-law pleading standard supplied the independent and adequate state-law ground that barred habeas review on the merits.

Although the state court of appeals cited *Allen,* which is suggestive of an independent procedural bar, this case does not comfortably fit into the *Whyte / Triplett / Garcia* framework. First, unlike those cases, the state court here said nothing about Rivera's claim being inadequate or conclusory as a matter of *pleading. See* ECF No. 12-11. Instead, Rivera had offered a fulsome argument setting forth his belief that he received ineffective assistance of counsel, and the court of appeals addressed his claims at great length (over more than twenty paragraphs). *See id.* Given its extensive analysis, it would be impossible to conclude that the state court of appeals was merely examining "the substance of the underlying claim to determine whether it is sufficiently *pleaded*." *Whyte,* 34 F.4th at 628 (italics added). Thus, unlike *Whyte, Triplett,* and *Garcia,* the state court here was not holding that the petitioner had failed as a matter of inadequate "pleading." Moreover, the courts in *Triplett* and *Garcia* both emphasized that the state courts had *not* addressed the merits of the defendants' ineffective assistance claims, unlike here. Thus, because the state court of appeals fully addressed the merits and did not consider Rivera to have failed any kind of procedural pleading rule, the

state court's extensive analysis under *Allen* was not "independent" of the federal issue now presented. *See Stinson v. Fuchs,* No. 20-CV-1101-JDP, 2023 WL 172481, at *3 (W.D. Wis. Jan. 12, 2023) ("it seems that the court of appeals affirmed the trial court's decision not to hold a hearing because the trial evidence conclusively showed that Stinson was not entitled to relief under *Strickland.*")

In sum, it's true that the Seventh Circuit has consistently applied *Allen* as an independent and adequate state-law ground, but it has done so only when *Allen* is applied as a pleading standard—not when the state court conducts a full merits analysis of the ineffective assistance claim without any reference to the adequacy of the appellant's pleading. *Whyte,* 34 F.4th at 628 (describing "*Allen*'s pleading standard"). In any event, it's clear that the state court's conclusion that *Allen* barred relief was inextricably intertwined with the court's determination that Rivera had not received ineffective assistance of counsel. *See Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir. 2002) ("[I]f the [state court] decision . . . fairly appears to rest primarily on the resolution of [federal] claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, we may conclude that there is no independent and adequate state ground and proceed to hear the federal claims.") Accordingly, I conclude that the state courts did not rely on an independent state-law ground. I will therefore proceed to analyze the federal claims regarding Rivera's right to counsel of choice and the showup procedure.

### B. Other-Acts Evidence

Rivera also argues that his trial counsel was ineffective for opening the door to other-acts evidence. The respondent argues that Rivera's other-acts claim is both procedurally defaulted and not cognizable in a federal habeas action. ECF No. 26 at 26–27. In his state

appellate proceedings, Rivera argued that the admission of other-acts evidence was prejudicial error. *See* ECF No. 12-2 at 7–9. Therefore, the Wisconsin Court of Appeals analyzed the claim on that basis, determining that the trial court properly instructed the jury on the limited use of the other-acts evidence and did not erroneously exercise its discretion in admitting the evidence. ECF No. 12-5 ¶ 41. Now, in his federal habeas petition, Rivera reframes the claim as one of ineffective assistance of counsel—arguing that his trial counsel improperly advised him to open the door to the other-acts evidence. ECF No. 19 at 27–30.

There can be no dispute that Rivera did not raise the constitutional claim of ineffective assistance of counsel in the state courts. And "[a] habeas petitioner may not resort to federal court without first giving the state courts a fair opportunity to address his claims and to correct any error of constitutional magnitude." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (citing 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999)). If the state courts would now hold the claim procedurally barred, there can be no opportunity to present it—rendering the claim procedurally defaulted in federal court as well. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Here, Rivera could have raised this allegation of ineffective assistance on direct review, so the state courts would bar the claim on collateral review absent a "sufficient reason" for not bringing it earlier. *See* Wis. Stat. § 974.06(4); *Escalona-Naranjo*, 517 N.W.2d at 181–84. Rivera claims the Wisconsin Court of Appeals answered the wrong question during his direct appeal because "[t]he question was not whether the other-acts evidence was properly admitted but whether trial counsel's performance impacted Rivera's right to a fair trial via trial counsel's ineffectiveness." ECF No. 19 at 30. This about-face conveniently glosses over the fact that he cannot identify any point in his state appellate briefing where he raised a constitutional claim

14

for ineffective assistance in relation to the other-acts evidence. *See* ECF Nos. 12-2, 12-4. Rivera does not offer any other reason for failing to exhaust the ineffective assistance claim in state court. Accordingly, I find it is procedurally defaulted, and Rivera has not attempted to establish cause and prejudice or a miscarriage of justice. *See Perruquet*, 390 F.3d at 514.

## II.     The State Court's Merits Findings do not Compel Federal Habeas Relief.

Having concluded that the other-acts claim is defaulted, I will address the three remaining claims on the merits: two claims of ineffective assistance of counsel, as well as a challenge to the sufficiency of the evidence.

### A.   *Right to Counsel of Choice*

Rivera argues his trial and appellate counsel were ineffective for failing to assert that police violated his right to have his retained counsel present (instead of the public defender) during the post-indictment lineup. On consideration of Rivera's postconviction motion, the Wisconsin Court of Appeals recognized that the primary purpose of counsel during a lineup is to observe the proceeding and prevent unfairness. ECF No. 12-11 ¶ 36 (citing *Wright v. State*, 175 N.W.2d 646 (Wis. 1970)). The court noted that substitute counsel may be adequate for purposes of satisfying the right to counsel, although it is not clear that the court based its ruling on that premise. *Id.* (citing *United States v. Wade*, 388 U.S. 218, 237 n.27 (1967) ("Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's own counsel.")).

In *Wade,* the Supreme Court explicitly left open "the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own

15

counsel would result in prejudicial delay." 388 U.S. at 237. That court also noted that substitute counsel may "eliminate the hazards" that could arise with a lineup and a completely unrepresented defendant. *Id.* at 237 n.27. The Court has not spoken conclusively on that question since *Wade,* and thus Rivera cannot point to any controlling Supreme Court precedent the state court of appeals misapplied. That alone is fatal to his argument. *See Scott v. Hepp*, 62 F.4th 343, 347 (7th Cir. 2023) (observing that "there can be no Supreme Court precedent to be contradicted or unreasonably applied, and therefore no habeas relief, when there is no Supreme Court precedent on point") (cleaned up) (citation omitted)). Moreover, recall that his claim is founded in ineffective assistance, so it is subject to the "double deference" standard under AEDPA and *Strickland*. *See Woods v. Donald*, 575 U.S. 312, 316–17 (2015) (stating that double deference requires federal courts "to afford 'both the state court and the defense attorney the benefit of the doubt'" (citation omitted)). Ultimately, Rivera cannot show that the state court's determination that his counsel was not ineffective for failing to raise an argument based on unsettled law was unreasonable.

The court of appeals also found that although the right to counsel had attached at the time of the lineup, that was true only for the felon-in-possession charge against Rivera, the only charge filed against him at that time. *See* ECF No. 12-11 ¶ 37. Because the jury convicted him of the homicide charge, it obviously had no trouble concluding that he was also a felon in possession of a firearm (the prior felony having been stipulated). *See id.* ¶ 40. As such, even if Rivera did have a right to his counsel of choice at the lineup, there was no prejudice because there was no reasonable probability of a different outcome. *See id.* This is a reasonable conclusion that does not contravene any controlling Supreme Court precedent.

16

Rivera protests that violation of the right to counsel of choice constitutes a structural error. ECF No. 19 at 15 (citing *Gonzalez-Lopez*, 548 U.S. at 151–52). It's true that the Supreme Court held that a violation of the right to counsel of choice over the course of the *entire* criminal proceeding constituted structural error. *See Gonzalez-Lopez*, 548 U.S. at 150–51. But, as noted earlier, the Supreme Court has left open the question as to whether a defendant is always entitled to his counsel of choice during a *lineup*. *Gonzalez-Lopez* therefore does not help Rivera.

### B. Showup Procedure

Rivera also argues that his trial and appellate counsel were ineffective for failing to argue that Beth's in-court identification was tainted by the single photo of Rivera that police had shown to Beth. ECF No. 19 at 16. Again, the Wisconsin Court of Appeals found Rivera could not satisfy the *Strickland* standards for deficiency or prejudice. ECF No. 12-11 ¶¶ 26, 33, 36, 40. The state court determined that state law as to showup procedures was unsettled at the time of Rivera's case. *Id.* ¶ 26. The court observed that "[w]hen the law is unsettled, the failure to raise an issue is objectively reasonable and therefore not deficient performance." *Id.* (citing *State v. Jackson*, 799 N.W.2d 461 (Wis. 2011)). That conclusion is consistent with federal law. *See Scott*, 62 F.4th at 348 (observing "that a failure to argue a point of unsettled law, not foreshadowed by existing case law, 'is not enough *by itself* to demonstrate deficient performance.'").

Moreover, the state court observed that federal "due process concerns relating to identification are not triggered unless the reliability of that evidence is called into question." ECF No. 12-11 ¶ 28 (citing *Perry v. New Hampshire*, 565 U.S. 228, 248 (2012) (holding "that the Due Process Clause does not require a preliminary judicial inquiry into the reliability of

17

an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement")). Rivera argues that the state court erred in determining that he failed to establish impermissible suggestiveness. ECF No. 19 at 16–21. However, Rivera relies on facts that the court of appeals reasonably rejected. *See Brumfield*, 576 U.S. at 314 (affording substantial deference to state court factual determinations).

For example, Rivera claims that his name appeared at the bottom of the showup photo. ECF No. 19 at 17–18. But the court of appeals observed that: (1) the detective testified that he displayed the photo to Beth in a manner so that she could not see the name, and (2) Beth testified that she could not remember if she saw a name on the photo but that she made the identification based on the face depicted in the photo. ECF No. 12-11 ¶ 31. Rivera also alleges that the showup was improper because Beth never gave a prior description of the perpetrator. ECF No. 19 at 19. But the record reflects that Beth provided a physical description of Rivera on the way to the hospital. *See* ECF Nos. 12-11 ¶ 30, 12-23 at 58:20–59:9 (police testimony reflecting that Beth told police that the person she saw with the firearm was named Alberto, that she knew him from personal contact on approximately four prior occasions, and that she described him as "male, Hispanic, approximately 30 years of age, with a stocky build and possible facial hair"). Given that she already knew who the defendant was, it's difficult to see how a photo of him would be unduly suggestive of anything. In any event, I find the state court's factual determinations adequately supported by the record and not unreasonable. *See Alston*, 840 F.3d at 370.

Because the court of appeals found Rivera failed to establish impermissible suggestiveness, the court observed that it did not need to determine the reliability of the

18

identification under the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972), and *Wade*, 388 U.S. at 241. *Id.* at 13 n.8. This conclusion comports with *Perry*'s holding that the reliability of eyewitness evidence is left to the jury's determination absent a showing of "improper state conduct." *Perry*, 565 U.S. at 245. Rivera attempts to jump ahead to those reliability factors by arguing Beth viewed the perpetrator under poor conditions. ECF No. 19 at 17. But these arguments were appropriate for the jury to consider and do not establish impermissible suggestiveness in the showup procedure itself. *See Perry*, 565 U.S. at 245. Accordingly, Rivera has not established eligibility for federal habeas relief.

### C. Sufficiency of the Evidence

Finally, Rivera argues that his convictions for homicide, attempted homicide, and being a felon in possession of a firearm were not based on sufficient evidence. ECF No. 19 at 23–26. "Fourteenth Amendment due process requires that the state must present sufficient evidence to prove each element of an alleged crime." *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In considering such a challenge, the Court must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017) (quoting *Jackson*, 443 U.S. at 319). This standard is a stringent one because of "the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). As the Supreme Court has explained:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing

19

court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). In fact, "if the state court's decision is 'at least minimally consistent with the facts and circumstances of the case,' the federal court is powerless to grant relief." *Hammer v. Karlen*, 342 F.3d 807, 810 (7th Cir. 2003) (quoting *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997)).

Rivera claims that the Wisconsin Court of Appeals unreasonably applied *Jackson* because it needed to analyze the evidence with reference to the specific elements of the crimes as defined by state law. The footnote from *Jackson* that Rivera cites appears to direct federal— rather than state—courts how to measure the sufficiency of the evidence in habeas actions. *See Jackson*, 443 U.S. at 324 n.16. In any event, Rivera put only his identity at issue—arguing the circumstantial evidence was insufficient to prove beyond a reasonable doubt that he was the shooter. ECF No. 12-2 at 9–11. The state court specifically addressed the identity question, observing that:

> Beth provided detailed testimony about Rivera's continuing and dominant role in the sequence of events that culminated with the shootings. Rivera's defense was in direct conflict with Beth's familiarity with Rivera, his pointing the gun at her, and the fact that she periodically heard his voice in the vehicle during the entire course of the events of April 8, 2015.

ECF No. 12-5 ¶ 45. The court concluded that "Beth's testimony was evidence from which the jury could reasonably infer that Rivera remained in the Tahoe with a gun in a position where he could and did shoot both Hodges and Beth." ECF No. 12-5 ¶ 48.

Rivera acknowledges that the State charged him as a party to a crime, so it only needed to prove that he was "concerned in the commission of the crime," not that he directly

committed the crime. ECF No. 19 at 24. He argues that if the State was relying on the "party to a crime" angle, then it needed to prove what role he played—i.e., either aiding and abetting or conspiring with the perpetrators to commit the crime. *Id.*; *see also* Wis. Stat. § 939.05(2). Rivera claims the evidence is insufficient to find that he played any role in the shooting. ECF No. 19 at 24.

Rivera's arguments are simply a reiteration of his defense that Beth was mistaken in identifying him. *Id.* That credibility determination belonged to the jury, as Rivera offers no evidence to prove that Beth was mistaken, and a federal habeas court is not equipped to reweigh the evidence. *See Herrera*, 506 U.S. at 400. Even though the court of appeals made an alternative finding regarding the "party to a crime" standard, the court concluded that the evidence was sufficient for a reasonable jury to find that Rivera actually shot Hodges and Beth. ECF No. 12-5 ¶ 48. On this record, I cannot say the state court's fact findings "ignore[] the clear and convincing weight of the evidence." *McManus*, 779 F.3d at 649. Because the state court's decision is consistent with the facts and circumstances of Rivera's case, it was not objectively unreasonable. *See Alston*, 840 F.3d at 370.[3]

\*      \*      \*

In sum, Rivera has not met his burden of demonstrating that he is eligible for relief under § 2254. He failed to fairly present the ineffective-assistance claim regarding the other-acts evidence to the Wisconsin state courts, and he has not established grounds to excuse this procedural default. As to the other three grounds for relief, the Wisconsin Court of Appeals

---

[3] Rivera did not exhaust his claim with respect to his felon-in-possession conviction because his brief to the Wisconsin Court of Appeals raised the sufficiency issue concerning only the homicide and attempted homicide convictions, and the state court addressed the matter on those limited fronts. *See* ECF Nos. 12-2 at 6, 12-5 ¶¶ 42–49. And in any event, Rivera testified on direct examination that he possessed guns knowing he was not supposed to do so while on parole. ECF No. 12-25 at 52:12–23.

decision was not objectively unreasonable in its determination of the facts or its application of Supreme Court precedent. Accordingly, I must dismiss Rivera's petition in its entirety.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." For a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find the district court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, I do not believe a reasonable jurist would find my procedural or merits rulings debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For all the foregoing reasons, the court **DENIES** the petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody, ECF No. 1, and **DISMISSES** this action. The court also **DENIES** the petitioner a certificate of appealability. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 28th day of March, 2024.

STEPHEN C. DRIES
United States Magistrate Judge

22